522 So.2d 852 (1987)
LABORERS' INTERNATIONAL UNION OF NORTH AMERICA, LOCAL 478, Petitioner,
v.
Myrtice BURROUGHS, Respondent.
No. 87-691.
District Court of Appeal of Florida, Third District.
December 15, 1987.
On Motion for Rehearing February 23, 1988.
Rehearing Denied April 20, 1988.
*853 Kelly & McKee and Mark F. Kelly, Tampa, for petitioner.
Lipman & Weisberg and David M. Lipman, Miami, for respondent.
Before SCHWARTZ, C.J., and HENDRY and NESBITT, JJ.
HENDRY, Judge.
The petitioner, Local 478 of the Laborer's International Union of North America, seeks certiorari review of an opinion of the Appellate Division of the Eleventh Judicial Circuit Court affirming per curiam two orders entered by a local administrative agency, the Dade County Fair Housing and Employment Appeals Board. Finding that an employee of the Local had engaged in sexual harassment against co-employee, respondent Myrtice Burroughs, the Board ordered Local 478 (1) to amend its by-laws and pay respondent monetary relief totalling $42,674.95 and (2) to pay legal fees and costs totalling $19,178.98, plus interest.
In seeking certiorari review, Local 478 has contended, inter alia, that the Board's action constituted an unconstitutional assertion of judicial authority, and that the ordinance as enforced against Local 478 is in conflict with a state statute on the same subject matter and is therefore unenforceable. We agree that the circuit court's refusal to invalidate the Board's actions in this proceeding departed from the essential requirements of law and represented an applicatior of incorrect law to the case.
On June 11, 1984 Burroughs initiated this proceeding by filing a charge of discrimination with the Board alleging that Local 478, through a supervisory employee, engaged in sexual harassment directed at her.
The Board was created by Dade County ordinance to enforce a statute patterned after Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e(b)-(3). Among other things, the Board has promulgated rules of practice and procedure governing proceedings such as that from which this petition arises. In accordance with such rules, the Board's Executive Director investigates charges of discrimination and may rely upon any form of information, including hearsay and other evidence which would not be admissible in court. After the Executive Director issues a report, it may be reviewed in a hearing before the Board, but the Board's rules provide that the burden of proof in such hearing is on the opponent of the Executive Director's report.
Upon investigating the charge filed by Burroughs, the Executive Director issued a report finding that Local 478, in violation of the relevant provisions of the ordinance, had engaged in sexual harassment against Burroughs, culminating in her termination in January, 1987 for refusing her supervisor's sexual advances. Local 478 challenged the report, and a hearing was held before the Board. In both the investigative stage and at the hearing, Local 478 presented evidence establishing that it employed no more than 11 persons during the times material to the proceeding.
Following the hearing, the Board approved the report of the Executive Director and entered a final order awarding Burroughs backpay and front pay, and requiring Local 478 to amend its by-laws to incorporate a policy and a procedure to address complaints of sexual harassment. The *854 Board subsequently entered an order awarding attorney's fees and litigation costs to Burroughs' counsel. A timely appeal was taken to the circuit court, appellate division, which affirmed per curiam in an opinion filed February 20, 1987. In response to that court's mandate, a petition for writ of certiorari was filed by Local 478.
We address first petitioner's argument that the Board's action constituted an unconstitutional assertion of judicial authority. Article V, section 1 of the Florida Constitution draws a distinction between "judicial power" and "quasi-judicial power." Although the constitution does not define these terms, it provides in pertinent part:
The judicial power shall be vested in a supreme court, district courts of appeal, circuit courts and county courts. No other courts may be established by the state, any political subdivision or any municipality... . Commissions established by law, or administrative officers or bodies may be granted quasi-judicial power in matters connected with the functions of their offices.
In the present case, two aspects of the Board's actions constitute invalid exercises of judicial authority. First, the Board awarded Burroughs a substantial monetary recovery against Local 478. This award included backpay, "front pay," and attorney's fees, together with a mandatory injunctive decree that the Local modify its bylaws to include procedures dealing with sexual harassment and report its efforts back to the Board. Remedies such as backpay and front pay are generally regarded as equitable in nature. E.g., Sullivan v. School Board of Pinellas County, 773 F.2d 1182, 1187 (11th Cir.1985) (claims for backpay are equitable whether sought under Title VII or Civil Rights Act of 1964). The award of such damages is a judicial function. See Southern Bell Telephone & Telegraph Co. v. Mobile America Corp., 291 So.2d 199, 202 (Fla. 1974) (the circuit court rather than the Public Service Commission had jurisdiction over claim for money damages against telephone company); cf. Broward County v. La Rosa, 505 So.2d 422 (Fla. 1987) (county ordinance empowering local administrative agency to award actual damages violates both article I, section 22 and article II, section 3 of the Florida Constitution), approving 484 So.2d 1374 (Fla. 4th DCA 1986); Hyman v. State, Dep't of Business Regulation, 431 So.2d 603 (Fla. 3d DCA 1983) (pari-mutuel wagering division's purse redistribution rule was invalidated by article I, section 18 of the Florida Constitution).
By construing specifically an ordinance patterned after Title VII which defines employment discrimination in general terms, the Board has assumed the uniquely judicial task of interpreting the law. "It is emphatically the province and duty of the judicial department to say what the law is." Marbury v. Madison, 1 Cranch, 137, 177, 2 L.Ed. 60, 73 (1803).
We next address the issue of whether the ordinance conflicts with a state statute on the same subject and is therefore unenforceable. The home rule charter which was preserved from the 1885 constitution, provides at article VIII, § 11(9) that:
It is declared to be the intent of the Legislature .. . that the provisions of this Constitution and general laws which shall relate to Dade County ... shall be the supreme law in Dade County, Florida, except as expressly provided herein and this section shall be strictly construed to maintain such supremacy of this Constitution and of the Legislature in the enactment of general laws pursuant to this Constitution.
Art. VIII, § 11(9), Fla. Const. (1885), adopted in art. VIII § 6(e), Fla. Const. (1968).
It is clear, therefore, the home rule authorization recognizes that the supremacy of state legislation must be preserved.
The Board's exercise of jurisdiction in this matter has brought into conflict certain provisions of the Human Rights Act of 1977 [Chap. 760, Fla. Stat. (1985)] with the Dade County ordinance, art. III, § 11A, Dade County Code. Specifically, section 760.02(6) of the Human Rights Act defines "employer" as "any person employing 15 *855 or more employees for each working day and each 20 or more calendar weeks in the current or preceding calendar year, and any agent of such a person." The Act also provides that:
It is an unlawful employment practice for an employer: ... to discharge ... any individual . .. because of such individual's race, color, religion, sex, national origin, age, handicap, or marital status. § 760.10(1)(a), Fla. Stat. (1985).
The Dade County ordinance at issue here contains a similar provision regarding the acts it prohibits. Section 11A-22(a)(1) provides:
It shall be unlawful employment practice for an employer: To fail or refuse to hire or to discharge any individual ... because of such individual's, race, color, religion, ancestry, national origin, age, sex, physical handicap, marital status or place of birth.
It is the foregoing provision which Local 478 was found to have violated in this case. But unlike the Human Rights Act, the Dade County ordinance defines employer as "any person who has five (5) or more employees in each of four (4) or more calendar weeks in the current or preceding calendar year, and any agent of such a person." Art. I, § 11A-2(10), Dade County Code.
It is well settled that, "[a] municipality cannot forbid what the legislature has expressly licensed, authorized or required, nor may it authorize what the legislature has expressly forbidden." Rinzler v. Carson, 262 So.2d 661, 668 (Fla. 1972) (municipal ordinance forbidding possession of particular firearm is superseded by exception contained in statute); cf. City of Casselberry v. Orange County Police Benevolent Ass'n, 482 So.2d 336, 340 (Fla. 1986) (a statewide statute prevails over a conflicting municipal civil service ordinance). Here, the Florida Legislature refused to extend the prohibitions against employment discrimination to employers employing fewer than 15 persons. See Regency Towers Owners Ass'n v. Pettigrew, 436 So.2d 266 (Fla. 1st DCA 1983) (condominium which did not have during the pertinent time period an aggregate of 15 or more employees on the job, was not an "employer" within the meaning of the Human Rights Act and therefore Commission lacked jurisdiction over manager's claim).
By extending these discrimination prohibitions to employers with five (5) or more employees, the Dade County ordinance is in conflict with the state statute and thus cannot be enforced. Cf. City of Miami Beach v. Rocio Corp., 404 So.2d 1066 (Fla. 3d DCA 1981) (local condominium conversion ordinance which supplements rather than countermands statute may coexist with that statute).
Although Local 478 is a labor organization, the charge filed by Burroughs was made against the Local in its role as an employer. In Chavero v. Amalgamated Transit Union, Local 241, 787 F.2d 1154, 1155 n. 1 (7th Cir.1986), the court affirmed the dismissal for lack of jurisdiction of an action against a labor organization by a former employee, alleging discriminatory discharge because the labor organization employed fewer than 15 persons:
Under Title VII a union can be both an "employer" and a "labor organization." As a labor organization, the union is covered under the Act and may be liable in respect to its dealings with employers or its membership, see 42 U.S.C. § 2000e-2(c), if it fits the definition of a labor organization. See 42 U.S.C. §§ 2000e(d) and (e). Where, however, a plaintiff attempts to hold the union liable in its employer capacity, it must fall under that definition, see 42 U.S.C. § 2000e(b), just as any other employer... .
See also Childs v. Local 18, IBEW, 719 F.2d 1379, 1382 (9th Cir.1983) (affirming dismissal of Title VII claim against unionemployer with fewer than 15 employees). Local 478 has employed fewer than 15 persons at all material times. Consequently, the orders of the Board, based upon the Dade County ordinance which prohibits conduct expressly left unregulated by the Legislature, violate the principle of the supremacy of state law which was preserved in the home rule provisions of the Constitution and as such, cannot stand.
*856 In view of our disposition, it is unnecessary to address the other issues raised by petitioner.
Certiorari is, therefore, granted, and the opinion of the circuit court is quashed with instructions to reverse the orders of the Board under review.
NESBITT, J., concurs.
SCHWARTZ, Chief Judge (dissenting).
I agree with neither ground assigned by the majority for quashing the decision below.
1. The supreme court cases of Metropolitan Dade County Fair Hous. & Employment Appeals Bd. v. Sunrise Village Mobile Home Park, Inc., 511 So.2d 962 (Fla. 1987) and Broward County v. La Rosa, 505 So.2d 422 (Fla. 1987), are confined to the invalidation of the authority of the commission to assess damages for "nonquantifiable injuries," Sunrise Village, 511 So.2d at 966, such as humiliation, embarrassment, and mental distress. This holding specifically does not apply to objective quantifiable awards as those involved here for past and future wage loss. Indeed, in La Rosa, 505 So.2d at 424 n. 5, the court specifically noted that there is
a significant distinction between administrative awards of quantifiable damages for such items as back rent or back wages and awards for such nonquantifiable damages as pain and suffering or humiliation and embarrassment.
See also Sunrise Village, 511 So.2d at 967 (Adkins, (ret.), J., concurring in part, dissenting in part); Jackson v. Concord Co., 54 N.J. 113, 253 A.2d 793 (1969) (rental and travel expenses properly awarded by administrative agency for wrongful refusal to lease apartment).
2. Nor is it correct to say that the Dade County ordinance is in constitutional "conflict" with the less stringent state statute upon the same subject. In the regulatory area involved in this case, the test of conflict is whether one must violate one provision in order to comply with the other. Jordan Chapel Freewill Baptist Church v. Dade County, 334 So.2d 661 (Fla. 3d DCA 1976). Putting it another way, a conflict exists when two legislative enactments "cannot co-exist." E.B. Elliott Advertising Co. v. Metropolitan Dade County, 425 F.2d 1141 (5th Cir.1970), pet. dismissed, 400 U.S. 805, 91 S.Ct. 12, 27 L.Ed.2d 12 (1970); Metropolitan Dade County v. Santos, 430 So.2d 506 (Fla. 3d DCA 1983), pet. for review denied, 438 So.2d 834 (Fla. 1983). Neither formulation of the rule applies in a situation like this one in which the identical anti-discrimination requirements are simply imposed by the county upon a wider and broader class of entities than the state. As was said in Elliott, 425 F.2d at 1150, which dealt with billboard regulations:
Section 479.15 ... clearly indicates that Chapter 479 was designed to establish minimum regulations for the outdoor advertising business and does not prevent, but rather leaves the way open and encourages stricter regulations by other governmental agencies in the lawful exercise of their power.
Similarly, we said in Jordan Chapel, 334 So.2d at 664, concerning supposedly competing bingo provisions:
The regulations provided by the state constitute minimum regulations. This court has not found, and the plaintiff has not cited any language in the statute which can be deemed a prohibition on additional stricter regulations by local government agencies, such as are contained in the Dade County ordinance.
That the county has seen fit to forbid more of its citizens from invidiously discriminating against others does not countermand the state policy and should not result in the invalidation of an authorized local regulation.

ON MOTION FOR REHEARING
PER CURIAM.
Upon consideration of the respondent's motion for rehearing, the court adopts the dissenting opinion of Chief Judge Schwartz as its own. Accordingly, the petition for writ of certiorari is denied.
SCHWARTZ, C.J., and HENDRY, J., concur.
NESBITT, Judge (dissenting):
I respectfully dissent. In my view, the ordinance which grants an administrative *857 body the power to assess economic damages constitutes an unconstitutional usurpation of judicial power, which under article V, section 1 of the Florida Constitution, is an exclusive judicial function. I would deny the motion for rehearing, grant the petitioner's application for certiorari, and quash the order under review.